O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| DEBRA L. MARSHALL, on behalf of herself and all others similarly situated,<br><br>            Plaintiff,<br><br>    v.<br><br>G2 SECURE STAFF, LLC; and DOES 1–100, inclusive<br><br>            Defendants. | Case No. 2:14-cv-04322-ODW(MANx)<br><br>**ORDER GRANTIING MOTION TO REMAND [11]** |

## I. INTRODUCTION

This action was removed from Los Angeles County Superior Court based on diversity jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Plaintiff Debra L. Marshall moves the Court to remand based on lack of minimal diversity and insufficiency of evidence in support of the amount in controversy. (ECF No. 11.) Marshall is a former employee of Defendant G2 Secure Staff, LLC ("G2"). Marshall is suing G2 for violations of California wage-and-hour laws on behalf of herself and a putative class of current and former employees. The Court finds that G2 has not met its evidentiary burden in establishing that the amount in controversy exceeds $5 million, and accordingly **GRANTS** Marshall's Motion to Remand. (ECF No. 11.)

## II. FACTUAL BACKGROUND

On April 3, 2014, Marshall filed the class-action Complaint in Los Angeles County Superior Court. Marshall alleges that G2 (1) failed to pay overtime wages; (2) failed to pay minimum wages; (3) failed to provide meal periods; (4) failed to provide rest periods; (5) failed to pay all wages upon termination; (6) failed to provide accurate wage statements; and (7) engaged in unfair competition. (ECF No. 1, Ex. A ("Compl.").) Marshall raises only state-law claims. Marshall defines the putative class members as "[Marshall] and all other current and former similarly situated employees employed by or formerly employed by G2 Secure Staff, L.L.C. and any subsidiaries or affiliated companies . . . within the State of California." (Compl. ¶ 1.)

G2 removed this action on June 1, 2014, on the basis of diversity jurisdiction under CAFA. (ECF No. 1. ("Not. of Removal").) On June 23, 2014, Marshall filed the present Motion to Remand, alleging that G2's removal was based on speculation and assumptions. (ECF No. 11.) G2 timely opposed. (ECF No. 12.) G2 supports its Opposition with two declarations from Julia Gostic, the Vice-President of Human Resources and Administration at G2. Marshall's Motion is now before the Court for decision.

## III. LEGAL STANDARD

Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress. U.S. Const. art. III, § 2, cl. 1; *e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). But courts strictly construe the removal statute against removal jurisdiction, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The party seeking removal bears the burden of establishing federal jurisdiction. *Durham v.*
/ / /

*Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006) (citing *Gaus*, 980 F.2d at 566).

Subject-matter jurisdiction exists in civil cases involving a federal question or diversity of citizenship. 28 U.S.C. §§ 1331, 1332. Under CAFA, federal district courts have original jurisdiction to a hear a class action if the proposed class has (1) more than 100 members, (2) the parties are minimally diverse, and (3) the amount in controversy in the aggregate exceeds the sum or value of $5 million. 28 U.S.C. § 1332(d)(2), (d)(5)(B); *see also Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348–49 (2013). In removal cases, the removing party bears the burden of proving subject-matter jurisdiction under CAFA by a preponderance of the evidence. *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013).

## IV.  DISCUSSION

G2 asserts that removal is proper here because there are more than 100 putative class members, minimal diversity is satisfied, and the amount in controversy exceeds $5 million. G2 contends that the number of putative class members is 2,594 employees, which well exceeds the 100-member requirement under CAFA. G2 further argues that the parties are minimally diverse, because G2 is a limited liability company and all of its members are citizens of Texas, while the at least one member of the plaintiff class is a citizen of California. Lastly, G2 argues that the amount in controversy has been satisfied, because according to its calculations, the amount in controversy is $7,409,799.20, exclusive of attorneys' fees. (Not. of Removal ¶ 35.) G2 reaches this calculation by adding together the estimates for unpaid meal and rest period premiums, waiting-time penalties, and wage statement penalties. (*Id.*)

Marshall does not dispute the class size. However, Marshall disputes whether the parties are minimally diverse and whether the amount in controversy has been established. (Mot. 8–9.) Marshall argues that G2 relies on assumptions and speculation in calculating the amount in controversy, and therefore has not met its burden of showing by a preponderance of the evidence that the amount in controversy

is at least $5 million. (*Id.*) For the reasons discussed below, the Court finds that G2 has not established the $5 million CAFA amount in controversy requirement, and therefore does not reach the question of whether the parties are minimally diverse.

In determining the amount in controversy for subject-matter jurisdiction, federal district courts look to the complaint. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). A court "must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in this complaint." *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1117 (C.D. Cal. 2010) (citations omitted) (quoting *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). If the amount in controversy is not facially apparent in the complaint, a court may consider the removal petition and any "summary-judgment-type evidence relevant to the amount in controversy at the time of removal," similar to a review under Federal Rule of Civil Procedure 56. *Singer*, 116 F.3d at 376; *accord*, *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). Summary-judgment-type evidence includes "materials in the record, including . . . affidavits and declarations[.]" Fed. R. Civ. P. 56(c)(1). However, the removing party is not required to provide extensive business records in order to establish the amount in controversy. *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV.S-07-0325 FCB EFB, 2007 WL 1302504, at *5 (C.D. Cal. May 1, 2007).

Similarly, courts sometimes allow the use of a 100-percent violation rate for determining the amount in controversy. Courts have assumed a 100-percent violation rate where the complaint does not allege facts specific enough to "'narrow the scope of the putative class or the damages sought.'" *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1150 (C.D. Cal. 2010) (quoting *Muniz*, 2007 WL 1302504, at *4). But, parties may not rely on the assumption that the 100-percent violation rule applies *without supporting the assumption with evidence*. *Garibay v. Archstone Cmtys*. LLC, 539 Fed. App'x 763 (9th Cir. 2013) (emphasis added). Additionally,

courts have "rejected the *unsupported* use of 100% maximum violation rates." See *Emmons v. Quest Diagnostics Clinical Labs, Inc.*, No. 1:13–cv–0474 AWI–BAM, 2014 WL 584393, at *5 (E.D. Cal. Feb. 12, 2014) (emphasis added) (quoting *Weston v. Helmerich & Payne Int'l Drilling Co.*, No. 1:13–cv–01092–LJO–JLT, 2013 WL 5274283, at *5–6 (E.D. Cal. Sept. 16, 2013).

Here, G2 includes meal and rest period violations, wage statement violations, and late pay violations in its calculation of amount in controversy. (Not. of Removal ¶¶ 19–32.) Marshall alleges that G2 "consistently" failed to provide employees with meal and rest periods. (Compl. ¶¶ 14, 16.) But, nowhere in the Complaint does the Court find any mention of the actual frequency of violations. The Court finds a similar void in G2's Notice of Removal, Opposition, and Declarations. G2 assumes a once per week violation rate for meal and rest period violations, arguing that its assumption is conservative and therefore justified. (Not. of Removal ¶ 24; Opp'n 8.) However, without evidence supporting the conclusion that once per week is suitable for calculation purposes, it is still an assumption, seemingly plucked from thin air.

Further, "consistently" does not necessarily amount to once per week. Some regularity can be discerned, but without further support, there is no justification for using a once-per-week rubric versus a twice-per-month rubric or a three-times-per-year rubric. G2 simply does not provide any support for its assumption. Because the calculation provided by G2 for meal and rest period violations is not supported by sufficient summary-judgment-type evidence, the Court finds that G2's calculations for meal and rest period violations are insufficient to support the amount-in-controversy requirement.

Additionally, the fines for wage-statement violations are derivative of the meal and rest period claims. Marshall contends that employees received wage statements that were inaccurate because they did not include the pay due to the employees for missed meal and rest periods. (Compl. ¶ 67.) If the calculations for missed meal and rest periods are faulty, then the wage statement violation calculations are also

inherently flawed. Accordingly, the calculations for wage statement violations fines are insufficient for amount-in-controversy purposes as well.

The remaining calculations are for waiting-time penalties, which G2 calculates to be $2,090,004.00 (Not. of Removal ¶ 28)—an amount insufficient to establish the requisite $5 million amount in controversy for CAFA claims. Even if attorneys' fees were included, they could only amount to $522,501.00 using a 25-percent benchmark. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (holding that where attorneys' fees are permissibly used in calculating amount in controversy, a benchmark of 25 percent of the common fund was appropriate).[1] Thus, the addition of the 25 percent benchmark here does not bring the amount in controversy even near the $5 million CAFA requirement. Accordingly, the Court finds that G2 has not met its evidentiary burden of showing by a preponderance of the evidence that the amount in controversy here is at least $5 million.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Marshall's Motion to Remand. (ECF No. 11.) This case is remanded to Los Angeles County Superior Court, Case No. BC541579. The Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

July 14, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

```
cc:order, docket, remand letter to
Los Angeles Superior Court, No. BC 541579
```

---

[1] In order to determine the amount of the 25-percent benchmark here, the Court multiplied the waiting-time penalties ($2,090,004.00) by 25 percent (.25).